# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 19, 2022
Lyle W. Cayce
Clerk

No. 21-60223

Zena Gebrgzabher,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A212 904 283

Before Graves, Willett, and Engelhardt, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

Federal immigration law contains a provision, the so-called "persecutor bar," that denies refugee status to anyone who "assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion."[1] This case asks what sort of actions along the continuum of conduct qualifies as persecutory assistance or participation.

---

[1] 8 U.S.C. § 1101(a)(42).

Zena Gebrgzabher, an Eritrean citizen, was forcibly conscripted into the Eritrean National Service, an open-ended requirement of compulsory service, and made to work as an armed guard at a highway checkpoint through which Eritrean security forces brought detainees. Several years later, Gebrgzabher escaped and made his way to America, where he applied for asylum and withholding of removal. The Board of Immigration Appeals (BIA) concluded that Gebrgzabher was ineligible because he assisted in the persecution of captives by impeding their escape at the checkpoint. As the BIA's determination is supported by substantial evidence—that is, the record does not compel a contrary result—we deny Gebrgzabher's petition.[2]

# I

Zena Gebrgzabher is a native citizen of Eritrea, an autocratic, highly militarized country in the Horn of Africa region. In 2005, when he was 18 years old, he was conscripted into the Eritrean National Service. After six months of training, the National Service assigned Gebrgzabher to a unit guarding a highway checkpoint. Four soldiers at a time guarded the checkpoint, while the others did chores. Gebrgzabher's guard duties included checking vehicle registrations and inspecting vehicles for contraband as they passed through the checkpoint.

Once a week to twice a month, security forces passed through the checkpoint with prisoners who were considered traitors for attempting to leave Eritrea without permission. These prisoners were usually barefoot, bloodied, and had their arms tied behind their backs with rope. Gebrgzabher saw security forces hitting the prisoners while unloading and loading them into the transport vehicle. He would watch the prisoners for 5–10 minutes

---

[2] Gebrgzabher retains relief under the Convention Against Torture as determined by the Immigration Judge and unchallenged by the Government.

while one of the security force guards took a prisoner list to the checkpoint commander. Gebrgzabher testified that the prisoners had their own guards so his job was not just to watch the prisoners but also to watch the security guards and inspect the security vehicle. Still, if he failed to watch the prisoners he would be detained.

In 2007, after a year manning the checkpoint, Gebrgzabher was transferred to a government bakery, where he baked bread for several years. In 2014, Gebrgzabher was imprisoned for three months for overstaying leave and forced to do hard labor. After his release, Gebrgzabher returned to the bakery for a short period before fleeing Eritrea into Sudan through a smuggler in December 2015.

In February 2017, Gebrgzabher applied for admission into the United States at the Port of Entry in Hidalgo, Texas without a valid entry document. Soon after, the Department of Homeland Security (DHS) served Gebrgzabher with a Notice to Appear charging him with removability under the Immigration and Nationality Act. At a master calendar hearing that April, Gebrgzabher conceded his removability and applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

Gebrgzabher testified in support of his application at a merits hearing held in May 2017. The Immigration Judge (IJ) questioned him about his role supervising others as a guard at the checkpoint. Gebrgzabher testified that he was not a supervisor and that his contradictory statement in the credible fear report was a translation error. But he admitted to having watched the political prisoners who passed through the checkpoint and that, if he had not watched them, they would have tried to escape. As to the prisoners' fates, Gebrgzabher stated that he believed they would be killed, tortured, or indefinitely detained.

The IJ initially orally denied Gebrgzabher's request for asylum and withholding and granted his request for CAT relief, but *sua sponte* vacated the decision the next day for further consideration. In July 2017, the IJ issued a written decision finding Gebrgzabher to be credible but denying him asylum and withholding. The IJ concluded that by guarding, and thus impeding the escape of, persecuted prisoners being "transported to their indefinite detention or their death," Gebrgzabher had "ordered, incited[,] assisted, or otherwise participated in" persecution under the persecutor bar. The IJ rejected Gebrgzabher's argument that he lacked the requisite intent to persecute the prisoners and declined to find a duress exception to the bar. However, the IJ granted Gebrgzabher CAT relief.

Gebrgzabher appealed the decision to the BIA and moved to remand the proceedings for the IJ to consider whether he was entitled to a duress exception to the persecutor bar. The BIA dismissed the appeal in February 2021. Citing the IJ's findings and conclusions, the BIA concluded that Gebrgzabher's guard duties invoked the persecutor bar and that Gebrgzabher had failed to meet his burden of proving by a preponderance of the evidence that the bar did not apply. The BIA also denied Gebrgzabher's motion to remand based on a recent Attorney General opinion concluding that the persecutor bar did not include a duress exception.

Gebrgzabher timely filed this petition for review.[3]

## II

"We generally have authority to review only the decision of the BIA."[4] But we will consider the IJ's decision when, as here, "the IJ's ruling

---

[3] *See* 8 U.S.C. § 1252(b)(1).

[4] *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007).

affects the BIA's decision."[5] We review the BIA's and IJ's legal conclusions *de novo*, but any factual conclusions, including whether an applicant is ineligible for asylum, for substantial evidence.[6] To succeed on substantial evidence review, a petitioner must demonstrate that "the record evidence 'compels' a conclusion contrary to the agency's determination."[7] That is, the evidence must be "so compelling that no reasonable factfinder could reach a contrary conclusion."[8]

## III

"Section 208(a) of the Immigration and Nationality Act authorizes the Attorney General, in his discretion, to grant asylum to an alien who is a 'refugee' as defined in the Act."[9] Importantly, the Act excludes from the term "refugee" any person "who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion."[10] This is known as the "persecutor bar" and it "applies to those seeking asylum or withholding of removal."[11] However, it "does not disqualify an alien from receiving a temporary deferral of removal under the [CAT]."[12] When the record contains evidence indicating that a ground for mandatory

[5] *See id.*

[6] *Id.* at 594 (quoting *Fonseca-Leite v. INS*, 961 F.2d 60, 62 (5th Cir. 1992)); *Gjetani v. Barr*, 968 F.3d 393, 396 (5th Cir. 2020) (quoting *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005)).

[7] *Gjetani*, 968 F.3d at 396.

[8] *Chen v. Gonzales*, 470 F.3d 1131, 1135 (5th Cir. 2006)

[9] *I.N.S. v. Elias–Zacarias*, 502 U.S. 478, 481 (1992) (citation omitted).

[10] 8 U.S.C. § 1101(a)(42).

[11] *Negusie v. Holder*, 555 U.S. 511, 514 (2009) (citation omitted).

[12] *Id.*

denial of the application for relief—such as the persecutor bar—may apply, the alien has the burden of proving by a preponderance of the evidence that it does not.[13]

Gebrgzabher challenges both the method and merit underlying the IJ's finding that the persecutor bar applies to him. As to the method, Gebrgzabher argues that the IJ applied the wrong test in determining whether he had assisted in the persecution of the political prisoners passing through the checkpoint. Citing a 2008 Eleventh Circuit case, he asserts that the IJ should have conducted a particularized, fact-intensive inquiry into whether his "personal conduct was merely indirect, peripheral and inconsequential association or was active, direct and integral to the underlying persecution."[14] The Government asks us to instead defer to the BIA's determination in *Matter of D-R-* (*Matter of D-R-II*)[15] that the correct test for assessing the applicability of the persecutor bar considers (1) the nexus between the petitioner's role, acts, or inaction, and the persecution, and (2) the petitioner's scienter.[16]

We have not expressly adopted a standard for determining whether an alien "assisted, or otherwise participated in persecution," and we need not do so now. The IJ's determination that the persecutor bar applies here is

[13] *See* 8 C.F.R. § 1240.8(d).

[14] *Chen v. U.S. Atty. Gen*, 513 F.3d 1255, 1259 (11th Cir. 2008). The Government argues that Gebrgzabher distorts the Eleventh Circuit's test in *Chen*. We do not address whether Gebrgzabher properly describes *Chen* because we conclude that his petition fails even under his iteration of the *Chen* test.

[15] 27 I. & N. Dec. 105 (BIA 2017).

[16] *Id.* at 119.

supported by substantial evidence even under Gebrgzabher's preferred standard. [17]

Again, to succeed, Gebrgzabher must show that "the record evidence compels a conclusion contrary to the agency's determination." [18] The record established that Gebrgzabher guarded prisoners who were detained for being perceived political traitors, knew these prisoners faced long imprisonment or death, and still impeded their escape. As the BIA reasoned in adopting the IJ's findings, Gebrgzabher's actions were "not merely tangential or incidental" to the persecution "when the record is viewed as a whole." Instead, Gebrgzabher's assistance in guarding the prisoners helped further their persecution.

Gebrgzabher argues that the IJ did not properly consider evidence that (1) he had no role in arresting, harming, or securing the prisoners for any long duration as they had their own guards at the checkpoint, (2) he was not armed at the checkpoint, and (3) he was engaged in legitimate law

---

[17] The Government contends that Gebrgzabher waived and failed to exhaust his argument that the evidence was insufficient to implicate the persecutor bar. The failure to exhaust a remedy before the BIA deprives us of jurisdiction. *Martinez-Guevara v. Garland*, 27 F.4th 353, 359 (5th Cir. 2022). Claims that the BIA considered are exhausted. *Id.* at 360. So a petitioner exhausts a claim if he can reasonably tie what he said to the BIA to the claims before us. *Id.* at 361.

Here, the BIA's decision recognized Gebrgzabher's arguments that the IJ "misstated the record or overlooked facts in arriving at the conclusion that the persecutor bar applied," as well as his discrete arguments on nexus and scienter. Likewise, here, Gebrgzabher argues that the evidence under the correct test is insufficient to establish that the bar applies. Gebrgzabher's claims here are reasonably tied to his claims before the BIA. Thus, Gebrgzabher's argument that the persecutor bar was not triggered is properly before us.

[18] *Gjetani*, 968 F.3d at 396 (quotation marks omitted).

enforcement activities when the prisoners passed through. But none of these arguments undermines the BIA's and IJ's conclusion.

First, Gebrgzabher "need not engage in the commission of physical atrocities to be found to have 'assisted' or 'participated' in them."[19] And the existence of other guards does not change that Gebrgzabher guarded the prisoners, too. The statute bars not just the primary persecutor, but also those who "assist" or "participate[] in" the persecution.[20] Moreover, Gebrgzabher testified that the prisoners would have tried to escape had he not been there. By his own admission, he prevented the political prisoners from escaping (furthering their persecution) even though other guards were present.

Second, Gebrgzabher concedes that the record before the BIA was silent on whether he carried a firearm at the checkpoint. He argues that his testimony that the guards were not allowed to use their firearms outside of training can only be interpreted as him not carrying a firearm at the checkpoint.[21] In his view, this shows that he was not solely responsible for guarding the prisoners. But Gebrgzabher's testimony is susceptible to an alternative interpretation: he could carry and even brandish his firearm, thus dissuading escape, even if he was not allowed to fire it. Indeed, even assuming

---

[19] *United States v. Vasquez*, 1 F.4th 355, 361 (5th Cir. 2021) (per curiam).

[20] 8 U.S.C. § 1101(a)(42).

[21] Gebrgzabher gave the following testimony in his credible-fear interview:

Q: When you were you [sic] in the national service did you ever use a weapon outside of training?

A: What do you mean by use?

Q: Use, to fire, to put it for whatever use it was made for.

A: They only train us they don't allow us to use it.

Gebrgzabher was unarmed, he nonetheless hindered detainees from fleeing by standing guard at the checkpoint.[22]

Finally, Gebrgzabher's engagement in purportedly legitimate law enforcement activity does not immunize him from the persecutor bar.[23] To be sure, when an applicant does "not exclusively engage in the persecution" we must decide whether he "actually assisted or otherwise participated in the persecution."[24] Thus courts have held that the persecutor bar does not apply when an applicant *only* engaged in legitimate law enforcement activity and the Government failed to establish a connection between that legitimate activity and the persecution.[25] That is not the case here. The record supports the BIA's conclusion that Gebrgzabher assisted in persecution by impeding the escape of the persecuted prisoners.

In sum, none of this evidence compels us to conclude that no reasonable factfinder could agree with the BIA that Gebrgzabher failed to meet his burden of rebutting the application of the persecutor bar. Our decision does not affect the IJ's unchallenged grant of CAT relief.

## IV

The petition for review is DENIED.

---

[22] *See Chen*, 513 F.3d at 1260 ("Those who perform the detention—whether by the use of force, threat of force, or expression of authority meant to dominate and control—are assisting in the underlying persecution.").

[23] *See Naujalis v. INS*, 240 F.3d 642, 647 (7th Cir. 2001); *Singh v. Gonzales*, 417 F.3d 736, 739–40 (7th Cir. 2005). Gebrgzabher tries to distinguish these cases by arguing that the law enforcement activity in those cases was not entirely legitimate. But the BIA implicitly concluded the same here as to Gebrgzabher's guard activities. He fails to show that determination was not supported by substantial evidence.

[24] *Singh*, 417 F.3d at 739–40.

[25] *See, e.g.*, *Diaz-Zanatta v. Holder*, 558 F.3d 450, 469 (6th Cir. 2009).